16-510-cv
Reich et. al. v. Betancourt Lopez et. al.

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: March 10, 2017    Decided: May 26, 2017)

Docket No. 16-510-cv

- - - - - - - - - - - - - - - - - - -x

THE HON. OTTO J. REICH, OTTO REICH ASSOCIATES, LLC,

Plaintiffs-Appellants,

- v.-

LEOPOLDO ALEJANDRO BETANCOURT LOPEZ, PEDRO JOSE TREBBAU LOPEZ,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - -x

Before:    JACOBS and DRONEY, Circuit Judges, and STANCEU, Chief Judge, U.S. Court of Int'l Trade.[*]

---

[*] Judge Timothy C. Stanceu, Chief Judge of the United States Court of International Trade, sitting by designation.

Plaintiff-Appellant Otto J. Reich is the principal of a (co-plaintiff) consulting firm specializing, inter alia, in fighting government corruption. He alleges that he and his firm were victims of an effort to discredit them by persons connected to a Venezuelan energy company that was in litigation with one of Reich's clients. This appeal is taken from the dismissal of his RICO and state law claims against the principals of the Venezuelan energy company, and we affirm the rulings of the District Court for the Southern District of New York (Oetken, J.). Dismissal of the RICO claims under Rule 12(b)(6) was proper because Reich failed to allege that the defendants engaged in a "pattern of racketeering activity": of his two theories, one fails because the predicate acts posed no continuing threat of racketeering; the other fails because the predicate acts he chose were insufficiently related to each other. We also affirm dismissal of the state law claims because Reich could not establish personal jurisdiction over either defendant.

> JEFFREY ERNEST GRELL, Grell Feist Prince PLC, Minneapolis, Minnesota, for Appellants The Hon. Otto J. Reich and Otto Reich Associates, LLC.
>
> FRANK H. WOHL (with Jonathan D. Lamberti, on the brief), Lankler Siffert &

Wohl LLP, New York, New York for Appellee Leopoldo Alejandro Betancourt Lopez.

JOSEPH A. DEMARIA, Fox Rothschild LLP, Miami, Florida for Appellee Pedro Jose Trebbau Lopez.

DENNIS JACOBS, <u>Circuit Judge</u>:

Plaintiff-Appellant Otto J. Reich is the principal of a (co-plaintiff) consulting firm specializing, inter alia, in fighting government corruption. He alleges that he and his firm were victims of an effort to discredit them by persons connected to a Venezuelan energy company that was in litigation with one of Reich's clients. This appeal is taken from the dismissal of his RICO and state law claims against the principals of the Venezuelan energy company, and we affirm the rulings of the District Court for the Southern District of New York (Oetken, <u>J.</u>). Dismissal of the RICO claims under Rule 12(b)(6) was proper because Reich failed to allege that the defendants engaged in a "pattern of racketeering activity": of his two theories, one fails because the predicate acts posed no continuing threat of racketeering; the other fails because the predicate acts he chose were insufficiently related to each other. We also affirm dismissal of the

3

state law claims because Reich could not establish personal jurisdiction over either defendant.[1]

# I

We take all the allegations in the complaint as true, as we must on a motion to dismiss.

Plaintiffs allege that Derwick Associates, a Venezuelan energy company, has stolen billions of dollars from the Venezuelan government. It allegedly bribes Venezuelan officials in order to secure energy contracts at inflated rates without public bidding, then subcontracts out the actual work while keeping a substantial profit. Derwick is run by Leopoldo Alejandro Betancourt Lopez ("Betancourt"), Pedro Jose Trebbau Lopez ("Trebbau"), and Francisco D'Agostino Casado ("D'Agostino"), the three original defendants in this case.

Plaintiff Otto Reich was the U.S. ambassador to Venezuela in the 1980s. He now runs a consulting agency focused on government relations and anti-

---

[1] Because RICO has its own jurisdictional provisions which may apply here, see 18 U.S.C. § 1965, we reach both the sufficiency of the RICO claim and the question of personal jurisdiction on the state law claims.

4

corruption; it is the co-plaintiff with Reich in this suit (we refer to them collectively as "Reich").

In 2012, the Derwick principals filed two state court defamation lawsuits against a Venezuelan bank that they believed was threatening to expose Derwick's criminal activities. The Venezuelan bank then hired Reich to help assist its defense of the defamation suits. Concerned about the assistance Reich might provide the bank, the Derwick principals undertook to break up the relationship. An agent of Derwick called one of the bank's largest shareholders to tell him falsely that Reich was secretly working for Derwick, thus inducing the bank to terminate its relationship with Reich. Around the same time, one of the Derwick principals called another of Reich's clients, Eligio Cedeño, to deliver the same falsehood: that Reich was working for Derwick. Cedeño also terminated his relationship with Reich. Reich's firing by Cedeño and the Venezuelan bank cost him tens of thousands of dollars monthly in consulting fees.

Reich filed suit against Betancourt, Trebbau, and D'Agostino in July 2013 bringing RICO and various state law claims. (D'Agostino has since been dismissed from the case pursuant to a stipulation of dismissal.) In a series of

rulings, the district court dismissed the RICO claims for failure to state a claim and the state law claims for lack of personal jurisdiction.

## II

We review de novo the dismissal of a complaint for failure to state a claim upon which relief can be granted. Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001).

RICO imposes liability on individuals working for an "enterprise" that commits certain predicate crimes that amount to a "pattern of racketeering activity." 18 U.S.C. §§ 1962, 1964. Reich has alleged an "enterprise": Derwick Associates. And he has alleged predicate crimes covered by RICO: wire fraud arising from the false phone calls,[2] and violations of the Travel Act arising from the bribery of Venezuelan officials. 18 U.S.C. § 1961(1). This case turns on whether those predicate acts amount to a "pattern of racketeering activity."

---

[2] Because we affirm dismissal of the RICO claim on the basis that Reich failed to plead a "pattern of racketeering activity," we do not reach the defendants' alternative argument that Reich failed to sufficiently plead wire fraud.

6

The Supreme Court has interpreted that phrase to require both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other.  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).  Since RICO only requires a combination of two or more predicate acts, 18 U.S.C. § 1961(5), Reich can mix-and-match predicate acts in an attempt to identify a pattern of racketeering activity that has both "continuity" and "relatedness."  He argues that two combinations of predicate acts each meet the pattern requirements.  His first theory is that the requisite pattern is formed by the two acts of wire fraud alone: the false phone call to the bank shareholder and the false phone call to Cedeño.  His second theory is that the requisite pattern is formed by the acts of wire fraud combined with the Travel Act violations.[3]  Both putative patterns include a wire fraud claim, which matters because "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations

---

[3] The multiple Travel Act violations alone do not suffice because RICO requires that the plaintiff suffer an injury from at least one of the predicate acts, European Cmty. v. RJR Nabisco, Inc., 764 F.3d 149, 151 (2d Cir. 2014) (per curiam), and Reich suffered no injury from the Travel Act violations.

7

that, upon closer scrutiny, do not support it." Crawford v. Franklin Credit

Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014).

Reich's first theory fails because the predicate acts lack continuity. His

second theory fails because the predicate acts lack relatedness.


A.   RICO's Continuity Requirement

RICO targets conduct that "amount[s] to or pose[s] a threat of continued

criminal activity." H.J., 492 U.S. at 239. Such continuity can be closed-ended or

open-ended. Id.

Criminal activity that occurred over a long period of time in the past has

closed-ended continuity, regardless of whether it may extend into the future. Id.

at 242. As such, closed-ended continuity is "primarily a temporal concept,"

Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008), and

it requires that the predicate crimes extend "over a substantial period of time."

H.J., 492 U.S. at 242. Predicate acts separated by only a few months will not do,

id.; this Circuit generally requires that the crimes extend over at least two years.

Spool, 520 F.3d at 184.

8

On the other hand, criminal activity "that by its nature projects into the future with a threat of repetition" possesses open-ended continuity, and that can be established in several ways. H.J., 492 U.S. at 241. Some crimes may by their very nature include a future threat, such as in a protection racket. Id. at 242. When the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future. Spool, 520 F.3d at 185. And similarly, criminal activity is continuous when "the predicate acts were the regular way of operating that business," even if the business itself is primarily lawful. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 243 (2d Cir. 1999).

Reich's first theory--involving wire fraud alone--is not continuous in either sense. The two phone calls are separated by at most a few months, too short a time for closed-ended continuity. H.J., 492 U.S. at 242 (noting that a period of a few months is insufficient for closed-ended continuity). Open-ended continuity is likewise unsupportable. The phone calls included no future threat of repetition, and false phone calls were not Derwick's "regular way of operating [its] business." Cofacredit, 187 F.3d at 243. Nor can Reich allege that Derwick's business was primarily unlawful. Even if Derwick pays bribes, it is primarily in

9

the energy business; it is not a narcotics ring or an organized crime family. See

United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995) (noting that open-

ended continuity does not exist when predicate acts are "in furtherance of

endeavors that are not inherently unlawful, such as frauds in the sale of

property"); United States v. Pizzonia, 577 F.3d 455, 465 (2d Cir. 2009) (holding, in

the context of continuity, that "long-term criminal associations plainly include

those traditionally grouped under the phrase 'organized crime'" (internal

quotation marks omitted)).

Reich's second theory--that the predicate acts are *both* the wire fraud and

the Travel Act violations--sufficiently pleads closed-ended continuity because it

alleges conduct from 2009 until at least the end of December 2012. We therefore

go on to consider whether it meets RICO's "relatedness" requirement.


**B.   RICO's Relatedness Requirement**

Because RICO does not apply to "isolated or sporadic criminal acts," it has

a relatedness requirement in addition to the continuity requirement. United

States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989) (in banc) (internal quotation

marks omitted). Predicate crimes must be related both to each other (termed

"horizontal relatedness") and to the enterprise as a whole ("vertical

relatedness"). <u>United States v. Cain</u>, 671 F.3d 271, 284 (2d Cir. 2012).

Vertical relatedness, which entails the simpler analysis, requires only:

that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.

<u>United States v. Burden</u>, 600 F.3d 204, 216 (2d Cir. 2010).  Reich's complaint

sufficiently alleges vertical relatedness because both crimes relate to Derwick's

activities: the Travel Act violations were done for Derwick's profit, and the wire

fraud was done to protect it from litigation.

The Supreme Court has explained that predicate acts are *horizontally*

related when they:

have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

<u>H.J.</u>, 492 U.S. at 240.  In certain cases, we have relaxed the requirement of

horizontal relatedness and held that proof of vertical relatedness alone can also

serve as proof of a horizontal relation.  <u>See, e.g.</u>, <u>United States v. Daidone</u>, 471

11

F.3d 371, 375 (2d Cir. 2006) (per curiam).  Reich urges us to do the same here.  We decline the invitation.

When dealing with "an enterprise whose business is racketeering activity, such as an organized crime family," horizontal relatedness can be established simply by linking each act to the enterprise.  United States v. Coppola, 671 F.3d 220, 243 (2d Cir. 2012) (internal punctuation and citations omitted).  When dealing with an enterprise that is primarily a legitimate business, however, courts must determine whether there is a relationship between the predicate crimes themselves; and that requires a look at, inter alia, whether the crimes share "purposes, results, participants, victims, or methods of commission."  H.J., 492 U.S. at 240; see also Indelicato, 865 F.2d at 1382 (looking to "temporal proximity, or common goals, or similarity of methods, or repetitions").[4]

We have explicitly drawn that same distinction--between enterprises that are and are not primarily legitimate--in the context of the "continuity" requirement for a RICO pattern.  See Burden, 600 F.3d at 219 ("'Where the

---

[4] Such a distinction between primarily legitimate and primarily illegitimate *enterprises* does not run afoul of the Supreme Court's instruction that we treat civil and criminal *cases* the same.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 489 (1985).

enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity.'" (quoting Indelicato, 865 F.2d at 1383-84)); see also United States v. Minicone, 960 F.2d 1099, 1108 (2d Cir. 1992) ("The question of whether acts form a pattern rarely is a problem with a criminal enterprise, as distinct from a lawful enterprise that commits occasional criminal acts." (internal quotation marks omitted)).  That distinction ensures that RICO does not ensnare "the perpetrators of 'isolated' or 'sporadic' criminal acts."  United States v. Vernace, 811 F.3d 609, 615 (2d Cir. 2016).  If every crime done by any employee of a large, ramified corporation was deemed horizontally related, it would be child's play to plead RICO actions against those companies notwithstanding that the crimes themselves might be "isolated" and otherwise unrelated.  Id.  So where, as here, the enterprise in question is not primarily in the "business [of] racketeering activity," predicate acts must be related to each other in kind for a RICO case to proceed.  Coppola, 671 F.3d at 243.

That relatedness analysis begins with the factors identified in H.J.: similar "purposes, results, participants, victims, [and] methods of commission."  492 U.S. at 240.  But predicate acts need not be linked in every way.  Daidone, 471 F.3d at

13

375. Using the H.J. list as a guidepost, we consider whether the Derwick principals' alleged acts of wire fraud are "related" to the alleged Travel Act violations.

The participants in both crimes were the Derwick principals, a circumstance that weighs in favor of relatedness. However, there is little else. As to the Travel Act violations, they were *accomplished* by the payment of bribes; the *result* was that Derwick secured energy contracts; and the *victims* were competing energy contractors and the government of Venezuela; whereas the wire fraud was *accomplished* by false phone calls, the *result* was that two clients terminated Reich, and the *victims* were Reich himself and his firm. The methods of commission, victims, and results of the predicate acts are all dissimilar and weigh against relatedness.

The last factor we consider is purpose, and the parties dispute which way it cuts. In the ordinary sense of "purpose," the Travel Act violations were intended to secure energy contracts and the wire fraud was intended to get Reich fired. In a very broad sense, however, the "purpose" of both crimes was to help Derwick. But to engage purpose at that level of generality would make the factor meaningless: virtually all crimes committed on behalf of an enterprise are done to

14

help it.  See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (rejecting the argument that various predicate acts were related because they shared the common goal of maximizing the wealth of the enterprise).  We therefore conclude that the distinct purposes of the alleged crimes weigh against relatedness.  Cf. Daidone, 471 F.3d at 376 (holding in the context of a primarily *illegitimate* enterprise that "increasing and protecting the financial position of the enterprise" was a "common goal[]").

The only horizontal link between the predicate crimes is the overlap of participants.  In this case, where the enterprise in question is not primarily in the business of racketeering, that is insufficient.  See Schlaifer, 119 F.3d at 97 (holding that predicate acts were unrelated despite an overlap of participants).  Reich's RICO theory based on the combination of the wire fraud and the Travel Act violations therefore fails.

Because his alternative theory--based on the wire fraud alone--lacked continuity, dismissal of his substantive RICO claim was appropriate.  His RICO conspiracy claim fails for the same reasons.  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

Reich's various state law causes of action against Lopez and Trebbau were dismissed for lack of personal jurisdiction. Reich argues for jurisdiction over the defendants on several bases: general jurisdiction, specific jurisdiction, and jurisdiction by personal service. As the district court determined, each premise is unavailable.

## A.    General Jurisdiction

For a court to exercise general jurisdiction over a defendant, 1) state law must authorize general jurisdiction; and 2) jurisdiction "must comport with constitutional due process principles." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012). We assume for the purpose of this appeal that state law would authorize jurisdiction, see N.Y. C.P.L.R. 301, but we conclude that the exercise of jurisdiction over the defendants would be improper because it would violate due process.

General jurisdiction over an individual comports with due process in the forum where he is "at home," meaning the place of "domicile." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (per curiam).

16

Owning property in a forum does not alone establish domicile. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile." United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004). In an "exceptional case," an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, Daimler AG v. Bauman, 134 S. Ct. 746, 761 n.19 (2014), but the Second Circuit has yet to find such a case.

The district court found, after jurisdictional discovery, that Lopez and Betancourt are not domiciled in New York. Reich does not contest that finding. Instead, he argues that this case is the exceptional one in which we can exercise general jurisdiction over the defendants even though they are domiciled elsewhere.

This is not a case in which we need to decide the question of whether it would ever be possible to exercise general jurisdiction over an individual in a forum other than the one in which he is domiciled, nor do we need to define the exact contours of what could make such an "exceptional case." See Daimler AG, 134 S. Ct. at 761 n.19 (declining to reach the question or lay out any such standards in the case of a corporate defendant). Betancourt, a Venezuelan

17

citizen, has relationships with New York banks and law firms, and owns an apartment in New York; but he spent fewer than 5% of nights in New York during a 31-month period the district court examined. Trebbau, also a Venezuelan citizen, does not own or rent any property in New York. In the same 31-month period, he spent fewer than 3% of nights in New York. The defendants' contacts with New York do not approach the point at which general jurisdiction over them would comport with due process.

## B. Specific Jurisdiction

Reich argues that, even in the absence of general jurisdiction, New York's long-arm statute confers specific jurisdiction over the defendants. Two sections of New York's long-arm statute--the "tortious act" and "transaction of business" provisions--are relevant to his claim.

New York allows for long-arm jurisdiction over defendants who "commit[] a tortious act within the state, except as to a cause of action for defamation." N.Y. C.P.L.R. 302(a)(2). Reich alleges that some of the false phone calls forming the basis of his wire fraud claim took place in New York, and he argued to the district court that was a "tortious act within the state" which established personal

18

jurisdiction. As the district court concluded, however, Reich's various state law claims sound in defamation, and were thus subject to the defamation exception of Section 302(a)(2).

On appeal, Reich shifts the emphasis of his argument to N.Y. C.P.L.R. Section 302(a)(1), which authorizes jurisdiction over defendants if: 1) the defendants transact business in New York; and 2) the cause of action arises from that transaction of business. Licci, 673 F.3d at 60. Reich argues that the defendants "transacted business" in New York by making the false phone calls, but he cannot use Section 302(a)(1) to do an end-run around the defamation exception of Section 302(a)(2). "In defamation cases . . . the single act of uttering a defamation, no matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 248 (2d Cir. 2007) (internal punctuation omitted). Reich also alleges that the defendants retained legal counsel in New York. While that is certainly a transaction of business, it is insufficient to confer specific jurisdiction because Reich's claims do not arise from the defendants' retention of counsel.

C.     **"Tag" Jurisdiction**

Finally, Reich argues that Betancourt (but not Lopez) was personally served while within the state and is thus subject to "tag" jurisdiction. Reich did not present this argument to the district court, however, and the parties dispute whether Betancourt was in fact personally served. Generally speaking, failure to raise in the district court an issue that requires factfinding effects waiver of that issue on appeal. Virgilio v. City of N.Y., 407 F.3d 105, 116 (2d Cir. 2005). We decline to consider Reich's waived argument for "tag" jurisdiction over Betancourt, and there is thus no basis for us to exercise personal jurisdiction over any of the defendants on Reich's state law claims.

## CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.

20