

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WESTON GADDY, | § | No. 08-22-00041-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| ELYSA FENENBOCK, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2019DCV2019) |

## **O P I N I O N**

This interlocutory appeal arises from a trial court's denial of Appellant Weston Gaddy's (Weston) special appearance. The plaintiff in the underlying case, Appellee Elysa Fenenbock (Elysa), filed suit against Weston and others: (1) asking the trial court to appoint a receiver to wind up a partnership; and (2) seeking a declaratory judgment associated with disputes over a lease. Weston, who is domiciled in New York, contends that the live pleading fails to allege any valid basis for a Texas court to assert personal jurisdiction over him for those two claims. Elysa views her petition as sufficient, and she also asserts that Weston's contacts with Texas make him subject to "general (all purpose) jurisdiction" such that he can be sued in Texas as if he is at home here. We disagree with Elysa and reverse the trial court's denial of the special appearance.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. The Parties and Their Assets

Mark Fenenbock (Mark) and Glenna Gaddy (Glenna) are siblings. Glenna has two children: Lane and Weston. Mark also has two children: Elysa and Lauren. In 1995, Bernard Fenenbock—Mark and Glenna's father—created the Fenenbock/Gaddy Magoffin Trust (the Trust) to hold assets for his four grandchildren: Weston, Lane, Elysa, and Lauren. Each grandchild received an equal share of the Trust's assets. In 2015, when Weston turned 30 years old, the trust terminated by its terms and by operation of law.

One of those assets was a Texas limited partnership, Silver Magoffin I, Ltd. (the Partnership). As limited partners, Mark, Glenna, and the Trust, each owned a 33% interest in the Partnership. The other 1% was owned by Silver Magoffin, Inc., whose sole purpose was to act as the general partner of the Partnership. Mark and Glenna are equal shareholders in Silver Magoffin, Inc. Relevant here, the Partnership owned a piece of real property located at 1720 Magoffin Drive in El Paso, Texas (the Property). In 1995, the Partnership leased the Property to W. Silver Recycling, Inc. As the name suggests, that entity runs a recycling operation. Its current president is Lane Gaddy, and Glenna Gaddy serves as its secretary.

Elysa's petition alleges that in February 2000, the Texas Secretary of State involuntarily dissolved the Partnership, which caused the beneficial ownership of the Partnership's assets to be transferred to the partners.[2] Based on that transfer, the owners of the Property and their percentages of undivided ownership in the Property would be follows:

---

[1] Except as otherwise stated, these facts come from the parties' pleadings.

[2] Later filings show that the State subsequently reinstated the partnership, a matter we address below.

Silver Magoffin, Inc.:   1%

Glenna Gaddy:         33%

Mark Fenenbock:       33%

Lane Gaddy:           8.25%

Weston Gaddy:         8.25%

Lauren Fenenbock:     8.25%

Elysa Fenenbock:      8.25%

According to Elysa's petition, the Partnership's general partner, Silver Magoffin, Inc., was required to wind up the affairs of the partnership upon the termination of the Partnership's existence, but it failed to do so.

## B.   The Asserted Claims

Elysa sued Weston and the other members of the Fenenbock/Gaddy family, along with Silver Magoffin, Inc. and W. Silver Recycling, Inc. asserting two claims.

### 1)   Winding-up the partnership

Her first claim for relief arises from the dissolution of the Partnership and asks the trial court to appoint herself or another person to wind up the Partnership by conveying deeds to the partners as tenants in common of the Property.   The deeds would reflect their respective share of ownership.   This claim is made under section 11.054 of the Texas Business Organizations Code, which allows a court to appoint a receiver and to supervise the winding up of domestic limited partnerships.[3]

---

[3] *See*  TEX.BUS.ORGS.CODE ANN. § 11.054 (winding up affairs of a domestic entity); TEX.BUS.ORGS.CODE ANN. § 1.002(18) (defining "domestic entity").

### 2) Declaratory relief

Elysa also sought declaratory relief under the Uniform Declaratory Judgment Act over issues related to the lease of the Property to W. Silver Recycling.[4]  According to Elysa's petition, W. Silver Recycling admitted that it had possibly contaminated the Property while engaged in recycling operations.   Under the lease, W. Silver Recycling agreed that it would indemnify the Partnership for any such contamination and that it would surrender the Property to the Partnership in good condition.   Her petition claims the Property has suffered "significant environmental degradation" during W. Silver Recycling's operations on the Property, thereby violating the lease agreement.   Also relevant to this claim, in 2016 W. Silver Recycling merged into Argentum Recycling, Inc.   Elysa contends that merger constituted an unagreed-to assignment or transfer of W. Silver Recycling's obligations under the lease agreement.

Based on these added facts, Elysa alleges that W. Silver Recycling: (1) did not comply with the terms of the lease agreement associated with the Property; (2) failed to properly exercise its option to renew the lease; and (3) has been a holdover tenant since the lease's expiration in 2015. She further alleges that the merger entitles the partners of the Partnership to collect an increase in rent.   The petition seeks a declaration on those matters, but does not seek monetary relief beyond a claim for attorney's fees.

### C.  Weston's Special Appearance

The petition acknowledges that Weston is a resident of New York and provides an address for service on him in New York City.   Elysa later filed a motion for substituted service. Following service pursuant to the order granting that motion, Weston filed a special appearance. In his special appearance, Weston challenged the Texas trial court's jurisdiction over him, arguing

---

[4] *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.003.

that: (1) he was never the owner of the Property or a partner in the Partnership, but was rather only a beneficiary of the Trust; (2) he is a resident of New York and does not reside in Texas; and (3) Elysa's petition failed to plead sufficient facts to support jurisdiction under the Texas long-arm statute. In his supporting affidavit, Weston stated that for the previous ten years he has resided in New York and never in Texas.

Elysa filed a response to the special appearance that made additional jurisdictional allegations and attached several exhibits. The response alleged and provided some documentation that Weston is a shareholder, director, and treasurer of W. Silver Recycling. He would telephonically attend an annual shareholder's meeting for W. Silver Recycling that was held in El Paso, Texas. He attended board meetings for W. Silver Recycling in El Paso and visited its El Paso facility. Further, Weston undertook a part-time internship at W. Silver Recycling in 2007. Weston also personally guaranteed a loan that WestStar Bank, a Texas bank, made to W. Silver Recycling. In addition, he has signed various W. Silver Recycling documents in his capacity as an officer with the corporation.

Elysa further alleged and provided some evidence to show that Weston made personal trips to Texas. In a deposition, Weston stated that he had made several personal trips to Texas for holidays, family meetings, and parties unrelated to this litigation.

Elysa's response also focuses on Weston's interests in other Texas business entities unrelated to this litigation. Weston owns interests in these Texas business entities: (1) Lanestone, LLC, which owns property in El Paso; (2) Arcanum Investments, LLC, an El Paso company for which Weston is a registered agent; (3) Stonelane Property Group, which possibly owned real estate in El Paso; and (4) Weston Lane, LLC, of which Weston is a manager. Elysa attached several exhibits establishing Weston's ties to these entities, including a "Lease Agreement

5

Extension" between W. Silver Recycling and Stonelane Property Group for a different address on Magoffin Drive.

Following a non-evidentiary hearing, the trial court denied Weston's special appearance. The trial court did not enter any associated findings of fact and conclusions of law. This interlocutory appeal follows. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(7) (authorizing interlocutory appeal from the grant or denial of a special appearance). In his sole issue, Weston argues that the trial court erred by denying his special appearance because Elysa failed to meet her initial burden to plead sufficient jurisdictional facts in her petition.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

### A. Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). To reach the question of law, however, a trial court must sometimes resolve questions of fact. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When the parties agree on the relevant facts—as they mostly do here—our review is purely de novo. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016); *Coleman*, 83 S.W.3d at 806. When, as in this case, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all facts necessary to support the ruling supported by the evidence. *Marchand*, 83 S.W.3d at 795; *In re E.S.*, 304 S.W.3d 571, 574 (Tex.App.--El Paso 2010, pet. denied). A party can challenge any of the implied findings under traditional legal and factual sufficiency review standards. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

### B. Applicable Law for Personal Jurisdiction

A Texas court may exercise personal jurisdiction over a nonresident defendant doing

business in Texas under the Texas long-arm statute.  *See* TEX.CIV.PRAC. & REM.CODE ANN.

§§ 17.041-.045.  For jurisdictional purposes, a nonresident does business in Texas when he or she:

> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]

> (2) commits a tort in whole or in part in this state[.]

*Id.* § 17.042(1), (2).  Yet, even if a transaction falls within either of these definitions, a court's

jurisdiction is also limited by the Due Process Clause of the U.S. Constitution.  *Moki Mac River*

*Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).  The Texas long-arm statute extends a

Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process

will permit" but no further.  *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977).

Thus, the contours of federal due process guide our decision here.

Federal due process limits a court's jurisdiction over nonresident defendants unless: (1) the

defendant has established minimum contacts with the forum state; and (2) the exercise of

jurisdiction comports with traditional notions of fair play and substantial justice.  *Int'l Shoe Co.*

*v. Washington*, 326 U.S. 310, 316 (1945).  "As a general rule, the exercise of judicial power is not

lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws.'"  *J. McIntyre*

*Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality opinion), *quoting Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958); *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d

777, 784 (Tex. 2005) ("For half a century, the touchstone of jurisdictional due process has been

'purposeful availment.'").

Purposeful availment includes deliberately engaging in significant activities within a state

or creating continuing obligations with residents of the forum.  *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 475-76 (1985).  It includes seeking profit, benefits, or advantage from the forum.

*Michiana*, 168 S.W.3d at 785. It excludes, however, "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (citations omitted); *Michiana*, 168 S.W.3d at 790 ("[M]inimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant."). Moreover, a party may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Moki Mac*, 221 S.W.3d at 575.

Personal jurisdiction can be either "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & 9 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). We describe the contours of each of these two categories in further detail below.

### C. Special Appearances

A party challenges the lack of personal jurisdiction through a Rule 120a special appearance; the consideration of the special appearance entails shifting burdens. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 & n.3 (Tex. 2010). A court must first determine whether the plaintiff has pleaded sufficient jurisdictional facts under the Texas long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). If the plaintiff's pleading burden is not met, a defendant may defeat jurisdiction simply by proving that he or she is not a Texas resident. *Kelly*, 301 S.W.3d at 659. If that initial pleading burden is met, however, the burden shifts to the defendant to negate all potential bases for personal jurisdiction that the plaintiff pleaded. *Id.* at 658. A nonresident defendant may negate jurisdiction on either a factual or legal basis. *Id.* at 659. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* The plaintiff can respond with evidence that affirms its allegations. *Id.* The defendant can then seek to show that even if the

8

plaintiff's alleged facts are true, the evidence legally cannot support jurisdiction. *Id.*

In this case, Elysa argued below that the trial court had both general and specific jurisdiction over Weston. Because the court did not issue findings of fact and conclusions of law that specified the basis on which it denied Weston's special appearance, we consider each contention in turn.

## III. GENERAL JURISDICTION

General (or all-purpose) jurisdiction applies when a defendant has contacts with the forum so continuous and systematic "as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction "involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) ("A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State.") (emphasis original).

For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021) ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile."). "Domicile" has been defined as "[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." *Yahsi v. Visor Muhendislik Insaat Turizm Gida Ve Mekanik Taahhut Ticaret Limited*

*Sirketi*, 2021 WL 3672801, at *8 (Tex.App.--Houston [14th Dist.] Aug. 19, 2021, no pet.), *quoting*

*Domicile,* BLACK'S LAW DICTIONARY (11th ed. 2019). An individual may have multiple

residences but only one domicile. *Id.*

Aside from domicile, the United States Supreme Court has sanctioned two other situations

in which the exercise of general jurisdiction over an individual is proper: when the person consents

to the forum's jurisdiction; and when the individual is within the forum when served with process.

*Nicastro*, 564 U.S. at 880. And many lower federal courts have limited general jurisdiction over

an individual to *only* domicile, consent, and service in the forum state. *See McCullough v. Royal*

*Caribbean Cruises, Ltd*., 268 F.Supp.3d 1336, 1349-50 (S.D. Fla. 2017) (collecting cases). For

corporate defendants, the Supreme Court has also suggested that there may be an "exceptional

case" where "a corporation's operations in a forum other than its formal place of incorporation or

principal place of business may be so substantial and of such a nature as to render the corporation

at home in that State." *Bauman*, 571 U.S. at 139 n.19. It is unclear, however, whether the

"exceptional case" exception would also apply to an individual defendant. *See Burnham v.*

*Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (declining to address the

issue but recognizing that "[i]t may be that whatever special rule exists permitting 'continuous and

systematic' contacts to support jurisdiction with respect to matters unrelated to activity in the

forum applies *only* to corporations[.]") (internal citations omitted) (emphasis original); *Cambria*

*Cnty. Employees' Ret. System v. Venator Materials PLC*, 532 F.Supp.3d 440, 451 (S.D. Tex. 2021)

("But even with that type of *exceptional case* in mind, it applies only with respect to corporations,

which of their nature exist in a more diffuse sense through their officers, directors, and employees.

No persuasive reason suggests why it should apply to an individual—whose physical contacts with

a forum can be objectively discerned and tallied.") (emphasis original); *see also Tracinda Corp.*

*v. Daimlerchrysler AG*, 197 F.Supp.2d 86, 97 (D. Del. 2002) ("Whether general jurisdiction applies to individuals is unclear."); *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F.Supp. 1190, 1193 n.4 (M.D. Fla. 1995) ("Nor is it clear that general jurisdiction can ever be held over a private, non-resident defendant.").

Assuming without deciding that there could be an exceptional situation where an individual could be "at home" in a state other than their domicile, we do not find those facts here. Although there is not a precise formulation for the point at which "jurisdictional contacts reach a tipping point," the general jurisdiction inquiry is "very different from a specific jurisdiction inquiry" and involves a "more demanding minimum contacts analysis," with a "substantially higher threshold." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 167-68 (Tex. 2007); s*ee also Searcy*, 496 S.W.3d at 72 ("Continuous and systematic contacts that fail to rise to" the level of rendering a defendant essentially at home in the forum state, "are insufficient to confer general jurisdiction over a nonresident defendant").

Here, Elysa relies on Weston's unrelated business ventures and his admission that he made repeated trips to Texas for the holidays and to see his family. These contacts, however, would not establish Weston as being "at home" in Texas. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (Venezuelan citizen who had relationships with New York banks and law firms and owns New York apartment, but spent fewer than 5% of nights in the state was not at home there); *Huynh v. Nguyen*, No. 01-17-00935-CV, 2018 WL 4131896, at *6 (Tex.App.--Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op.) (finding no general jurisdiction over California resident who comes to Texas "all the time," has leased office space in Texas, was listed as a managing member for two Texas limited liability companies, and filed a defamation lawsuit as a plaintiff in Texas); *Yahsi*, 2021 WL 3672801, at *9 (even assuming Turkish individual was sole member for several

Texas LLCs, had two personal bank accounts in Texas, had utilities in his name at two Houston addresses, and IRS sent the notice of Employer Identification Number to him at a Texas address, record failed to demonstrate general jurisdiction); *Furie Petroleum Co., LLC v. Ben Barnes Group, L.P.*, No. 03-14-00181-CV, 2015 WL 6459606, at *8 (Tex.App.--Austin Oct. 23, 2015, no pet.) (mem. op.) (record failed to establish general jurisdiction where Dubai citizen was sole owner, shareholder, manager, and member of Texas company, owns property in Texas, travels to Texas regularly, has a lawyer in Texas, filed suit in a Texas court, and owns interests in a business entity that owns property in Texas).

Elysa similarly relies on Weston's status as a corporate officer for W. Silver Recycling, which is another defendant in the lawsuit. She also relies on Weston having guaranteed a bank loan with a Texas bank for W. Silver Recycling. While these kinds of contacts might be germane to a specific jurisdictional analysis—*if* they had some connection to the claims being sued on— they do not make Weston at home in Texas in his individual capacity. Moreover, the fiduciary shield doctrine generally requires courts to segregate actions that an individual takes in their individual capacity, from those taken as officers or directors of the entities they serve. *See Atiq v. CoTechno Group, Inc.*, No. 03-13-00762-CV, 2015 WL 6871219, at *9 (Tex.App.--Austin Nov. 4, 2015, pet. denied) (mem. op.) (considering only contacts attributable to non-U.S. citizen in his personal capacity and finding none sufficient to meet the "at home" test for general jurisdiction); *Furie Petroleum Co.*, 2015 WL 6459606, at *8 (same).

Finally, Elysa posits that Weston was the registered agent for Arcanum Investments whose home office is in Texas. A franchise tax form for Arcanum Investments that Elysa submitted lists Weston as the registered agent and shows a registered office address in El Paso, Texas. The same form shows Weston's mailing address, however, as being in New York City. A person's

ownership of Texas business entities does not mean that the person is domiciled in Texas. *Yahsi*, 2021 WL 3672801, at *9. We find no authority for the proposition that being a registered agent for a Texas entity also makes the agent for service domiciled in Texas for the purposes of general jurisdiction.

Elysa cites no Texas case, and we have found none, that demonstrate the contacts present in this case would meet the "exceptional circumstance" test for general jurisdiction, even assuming it would apply to an individual defendant. In addition, she cites no Texas authority that under the "paradigm" as articulated by the United States Supreme Court that an individual can be "domiciled" in more than one state. Given our record, and the current controlling law, even if the trial court relied on a general jurisdiction analysis, it would have erred in doing so.

## IV. SPECIFIC JURISDICTION

Having determined that Weston is not subject to general jurisdiction in Texas, we turn to specific jurisdiction. A plaintiff asserting that a court has specific jurisdiction over a nonresident defendant must show that her claims arise out of or relate to the defendant's contacts with the forum. *Bauman*, 571 U.S. at 127, *citing Helicopteros*, 466 U.S. at 414 n.8; *see also Moki Mac*, 221 S.W.3d at 579 ("The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum."). Under the Texas application of that requirement, "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585. Specific jurisdiction is not as exacting as general jurisdiction in that the contacts may be more sporadic or isolated so long as the cause of action arises out of those contacts. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). We look to the actions of the defendant,

13

not the unilateral activity of some other person. *Michiana*, 168 S.W.3d at 785.

On appeal, Weston primarily argues that Elysa failed to plead sufficient jurisdictional facts to justify the trial court's exercise of jurisdiction under the Texas long-arm statute. As noted above, the plaintiff carries the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). The pleading requirement is minimal, however, and can be satisfied with an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *See Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 440 (Tex.App.--Dallas 2004, pet. dism'd). Elysa, however, did not make that allegation in the petition, but rather pleaded facts specific to her two causes of action. We address each in turn.[5]

## A. Suit to Wind Up the Partnership

In her first claim, Elysa sought to have the court appoint a receiver to wind up the Partnership pursuant to section 11.054 of the Texas Business Organizations Code. *See* TEX.BUS.ORGS.CODE ANN. § 11.054. Under that statute, "Subject to the other provisions of this

---

[5] The parties sidestep one important procedural issue. Rule 120a provides that the "court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX.R.CIV.P. 120a(3). At least one court has required that the facts alleged to support jurisdiction must be specifically pleaded in the plaintiff's petition, and not some other pleading (such as a response to the special appearance). *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex.App.--Dallas 2021, no pet.). For that holding, the *Saidara* majority opinion relies on the Texas Supreme Court's decision in *Kelly v. General Interior Constr., Inc.,* reasoning that a "plaintiff bears the initial burden *to plead* sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute," and that "the defendant's corresponding burden to negate jurisdiction is tied to the allegations *in the plaintiff's pleading*." *Id.* at 129, *quoting Kelly*, 301 S.W.3d 653, 658 (Tex. 2020) (emphasis in original). Should the plaintiff's initial petition lack sufficient allegations, "then the plaintiff should amend the pleading to include the necessary factual allegations." *Id.*, *quoting Kelly*, 301 S.W.3d at 659. But not all courts of appeal adopt this rationale. *See Southwire Co., LLC v. Sparks*, No. 02-21-00126-CV, 2021 WL 5368692, at *12 (Tex.App.--Fort Worth Nov. 18, 2021, no pet.) (mem. op.) (adopting the concurrence's position in *Saidara* that Rule 120a allows a plaintiff to rely on evidence and pleadings beyond the petition in responding to a special appearance), *citing Saidara*, 633 S.W.3d at 145 (Schenck, J., concurring). We need not decide today whether the jurisdictional allegations are limited to the plaintiff's petition, or whether they may be found elsewhere, because even considering all the allegations in Elysa's response to the special appearance, we find them insufficient to establish jurisdiction over Weston.

14

code, on application of a domestic entity or an owner or member of a domestic entity, a court may: (1) supervise the winding up of the domestic entity; (2) appoint a person to carry out the winding up of the domestic entity; and (3) make any other order, direction, or inquiry that the circumstances may require." *Id.*

Based on her petition, the following are the only pleaded facts that would support jurisdiction under that claim: (1) Weston was the beneficiary of a trust; (2) the trust terminated and Weston received his share of its assets; (3) one of the assets was a limited partnership that held a piece of real property located in Texas; (4) in February 2000, the Texas Secretary of State terminated the partnership; and (5) as a result of the termination, an undivided share of the beneficial ownership of the Texas real property passed to Weston. And without saying as much, the "winding-up" claim thus effectively asserts that Weston is amenable to the jurisdiction of a Texas court so he can receive a deed that formalizes his beneficial ownership in the real property.

But even assuming that Weston is a necessary party to that determination—a valid question in its own right[6]—our record contains evidence that the Texas Secretary of State has reinstated the Partnership. A court-appointed receiver stated in a letter brought to the attention of the trial court below that the Partnership was reinstated by the Texas Secretary of State on July 8, 2019. That determination undercuts the allegation that the beneficial ownership of the limited partnership's property was passed to Weston. *See* TEX.BUS.ORGS.CODE ANN. § 11.206(a) ("When the reinstatement of a terminated entity takes effect: (1) the existence of the terminated entity is considered to have continued without interruption from the date of termination; and (2) the

---

[6] *See* TEX.BUS.ORGS.CODE ANN. § 11.411 ("Governing persons and owners or members of a domestic entity are not necessary parties to an action for a receivership or liquidation of the property and business of a domestic entity unless relief is sought against those persons individually."); *see also* 64 Tex.Jur.3d *Receivers* § 64 (although parties with an interest in the property are allowed to intervene in the receivership appointment action, they may not be necessary parties).

15

terminated entity may carry on its business as if the termination of its existence had not occurred.").

And the need to distribute deeds to all the beneficial owners of the property is the only jurisdictional hook even arguably pleaded for the first claim. That is to say, there are no allegations that Weston took any part in the control of the Partnership. Nor are there any allegations that Weston took any specific action in Texas germane to the dissolution of the Partnership (now reinstated). At most, he is alleged to be a passive beneficial owner of a piece of Texas land. And the reinstatement of the Partnership's legal status removes any need to pass legal title in the Property to Weston.

This turn of events effectively renders [Elysa's] first claim moot.[7] Weston raised the mootness issue in his Reply to Elysa's Response to the Special Appearance. But even if he had not, mootness is an apriori jurisdictional issue that a court, even a court of appeals, must consider sua sponte. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018); *Amarillo v. R.R. Comm'n of Texas*, 511 S.W.3d 787, 794 (Tex.App.--El Paso 2016, no pet.). Whatever the merits of the first claim might have been as to issuance of deeds for the 1720 Magoffin Drive property, it is now moot, and cannot provide a jurisdictional basis for bringing Weston into the lawsuit.

## B. Suit for Declaratory Judgment

Elysa's second claim seeks various declarations over the lease between W. Silver Recycling and the Partnership. The petition does not allege that Weston is a party to the lease agreement. Nor does the petition allege that Weston acted in Texas to cause W. Silver Recycling to violate its lease obligations. While Elysa does claim in her response to the special appearance

---

[7] A case is rendered moot when: (1) a party seeks to obtain a judgment upon some controversy, when in reality none exists; or (2) a party seeks a judgment upon some matter which cannot have a practical legal effect on a then existing controversy. *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.—El Paso 2010, no pet.). Stated otherwise, when an actual controversy no longer exists between the parties, "the decision of an appellate court would be a mere academic exercise." *Id.*, *quoting Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.--El Paso 1994, no writ).

16

that Weston undertook multiple actions on behalf of W. Silver Recycling in his capacity as an officer and treasurer, none of those allegations relate specifically to the lease, the renewal of the lease, or the merger as it pertains to the lease. She asserts that he traveled to Texas, owned other entities here, and guaranteed loans for W. Silver Recycling. Absent, however, are any allegations that those actions in any way pertain to the lease dispute. As such, those allegations are irrelevant to a specific jurisdiction inquiry under this claim. *See Bauman*, 571 U.S. at 127, *citing Helicopteros*, 466 U.S. at 414 n.8; *see also Moki Mac*, 221 S.W.3d at 579.

It was Elysa's burden to plead sufficient jurisdictional facts to support the exercise of jurisdiction over Weston. Because Elysa failed to meet her burden to do so, Weston needed only to show that he is domiciled outside of Texas. *See Square 9 Softworks, Inc. v. SIPS Consults Corp.*, No. 05-20-01116-CV, 2021 WL 4724338, at *1 (Tex.App.--Dallas Oct. 11, 2021, no pet.) (mem. op.), *citing Kelly*, 301 S.W.3d at 658 (recognizing that when a plaintiff fails her initial burden to plead sufficient jurisdictional facts, a defendant may avoid jurisdiction by proving that he is not a resident of Texas). Because the evidence establishes that Weston is not a resident of Texas, we conclude that the trial court erred by denying Weston's special appearance on this claim as well.[8]

Weston's Issue One is sustained.

---

[8] In her petition, Elysa alleged that the Property was possibly contaminated through W. Silver Recycling's operations on the premises. And during the special appearance hearing, the court-appointed receiver, Edward Bunn, claimed that Weston as an owner of the property could be held strictly liable under Texas Commission on Environmental Quality (TCEQ) rules and the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) for clean-up of the site and other damages. *See* 42 U.S.C. § 9601, 9607(a); 30 TEX.ADMIN.CODE ANN. § 335 et seq.; TEX.HEALTH & SAFETY CODE ANN. § 361.271(a). Elysa reiterates these arguments on appeal, claiming that Weston could face potential personal liability for all costs of removal or remedial action by the federal or state government to address any contamination on the Property. In that event, Bunn would have to bring Weston back into the lawsuit if the claims against him are dismissed. Even so, Elysa has not pleaded or otherwise alleged a claim under that theory, and these considerations are premature at this stage of the litigation.

## V. CONCLUSION

Because Elysa's petition lacks sufficient allegations to support the exercise of jurisdiction and because Weston has proved that he is not domiciled in Texas, Weston has met his burden under Rule 120a to defeat general jurisdiction. Elysa's alternate contention that Weston is subject to specific jurisdiction fails as we explain above. We reverse the trial court's order denying Weston's special appearance and render judgment dismissing Elysa's claims against Weston for lack of personal jurisdiction.


JEFF ALLEY, Justice

July 27, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.